IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

UNITED STATES OF AMERICA,

v.  :  CASE NO.: CR513-019

ERVIN JAMAAL WESTLEY

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Ervin Westley ("Westley") has been charged with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Westley filed a Motion to Suppress Evidence, as supplemented, and a Motion to Suppress Statements, as supplemented. The Government responded. The undersigned conducted an evidentiary hearing on these Motions on March 23, 2014, at which: Detective Susan Lottinville, Kingsland Police Department; Agent Scheafer Farmer, Homeland Security Investigations ("HSI"); Agent Kevin Barney, HSI; Detective Charles Woodall, Liberty County Sheriff's Office; Malik O'Hara, Westley's nephew; Michael Cobb, Westley's brother; and Westley, testified.

## STATEMENT OF THE FACTS

Lottinville has been with the Kingsland Police Department for over seven (7) years and a member of the Georgia Bureau of Investigation Internet Crimes Against Children Task Force for approximately five (5) years. Lottinville investigates child

exploitation cases as a member of that task force. As part of her investigative work, Lottinville was provided with computer software, called peer-to-peer, which has been modified to allow law enforcement personnel to "see[ ] people who are offering to share what could be potentially files of interest or what we call child notables. Would be possibly child pornography(sic)." (Doc. No. 52, p. 7). Lottinville explained that a peer-to-peer network is "a publicly available network where computers basically speak to each other electronically." (Id.). Lottinville explained that eDonkey or eMule is a type of peer-to-peer software, which is a free download available on the internet. Lottinville stated that peer-to-peer networks allow a person to seek out files of interest of other persons who have this network, usually by entering a search term. Lottinville also stated that her software system is designed to look for very specific numbers or a combination of numbers and letters which are "extremely unique to an image or movie file[ ]" already identified as being child pornography. (Id. at p. 10). Lottinville's software located an internet protocol ("IP") address, which is an address indicating where a computer is located, in Waycross, Georgia, with several files which matched the unique combination of numbers and letters and over 500 images suspected of being child pornography. Lottinville gave this information to HSI Agent Brad Haines.

Once HSI received the information regarding the IP address from Lottinville, agents sent a summons to the internet service provider to request the name of the account owner of that IP address and the physical location of the computer. Farmer testified that agents learned that Mary Cobb was the name registered for the IP address and that 607 Owens Street, Waycross, Georgia, was the physical address for the location of the computer. Farmer stated that HSI agents began investigating and

AO 72A
(Rev. 8/82)

conducting surveillance in the area of the physical address and were able to determine that it looked as though three (3) people lived at that address, including Westley. Farmer noted that he contacted Woodall to assist in the investigation to identify files from the IP address to determine which of those files could be considered child pornography. Woodall saw that child pornography (or suspected child pornography) images were being made available from a computer with this already-identified IP address on the peer-to-peer eDonkey network. (Id. at p. 54). Based on the information Farmer had gathered through research and surveillance, he prepared an affidavit in support of an application for a search warrant. Before executing the warrant, Farmer contacted a lieutenant with the Waycross Police Department and told the lieutenant about the investigation and that there was an officer with the police department connected to the investigation (Westley's brother, Derek Cobb). Farmer was not involved in the actual execution of the search warrant, as he and Woodall arrived a "few minutes" after the warrant's execution. (Id. at p. 22). When Farmer came into the house, he saw Westley and his mother sitting at the dining room table, and everyone in the house had been secured, which Farmer stated meant that the people in the house were sitting somewhere or being monitored by agents to "kind of restrict movement in the house[.]" (Id. at pp. 22–23).

Westley testified that he was asleep in his bedroom when five or six officers came into his bedroom with their guns drawn and handcuffed him. (Id. at p. 86). Westley also testified that the officers moved him to the living room and had him sit on the couch for about ten (10) minutes while he was handcuffed. Westley also testified that he began complaining about the handcuffs hurting his wrists after he was moved to

3

the dining room, and an officer removed the handcuffs. However, Westley stated that, once he was moved to the kitchen, he "tried to get up," and a tall, bald agent told him "no; sit down[ ]" while putting his hands on Westley's shoulder to push him down to stay in a chair. (Id. at p. 88).

Westley testified that at some point he told his mother that it "was [his] fault[ ]" that officers were at the house because of "something on [his] computer." (Id. at p. 90). Farmer and Haines began asking Westley questions, including what kind of files he had viewed. Westley tried to pronounce the names of the files and even wrote down the names of some of these files. Westley was not advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), during the approximately 15 minute interview. Westley was transported, in a police transport van, to the police station for further questioning.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Suppress Evidence**

Westley asserts that law enforcement officials had no probable cause to justify the monitoring of his computer. Westley also asserts that law enforcement officials began monitoring his computer before they had any information that he had allegedly committed any wrongdoing. Westley contends that the search was impermissible under the Fourth Amendment.

The Government avers that Westley cannot show that he had a subjectively or objectively reasonable expectation of privacy based on the files on his computer being made publicly available through his computer. The Government also avers that, even if

4

Westley had a subjectively reasonable expectation of privacy in the shared files on his computer, his expectation was not objectively reasonable.

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. In order for Fourth Amendment protections to apply, the person invoking the protection must have an objectively reasonable expectation of privacy in the place searched or item seized. Minnesota v. Carter, 525 U.S. 83, 88 (1998). "To establish a reasonable expectation of privacy, the person must show (1) that he manifested 'a subjective expectation of privacy' in the item searched or seized, and (2) a willingness by society 'to recognize that expectation as legitimate.'" Rehberg v. Paulk, 611 F.3d 828, 842 (11th Cir. 2010), *remanded on other grounds by* 682 F.3d 1341 (11th Cir. 2012) (citing United States v. McKennon, 814 F.2d 1539, 1543 (11th Cir. 1987)). The Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." United States v. Norman, 448 F. App'x 895, 897 (11th Cir. 2011) (internal citation omitted). In order to challenge a search under the Fourth Amendment, the defendant bears the burden of establishing both a subjective and an objective expectation of privacy in the area or object searched. United States v. Segura–Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one

that society is prepared to recognize as reasonable." Norman, 448 F. App'x at 897 (citing United States v. Epps, 613 F.3d 1093, 1097–98 (11th Cir. 2010)).

Westley had files containing child pornography images on the peer-to-peer network eDonkey, and his computer "answered" queries for these images based on keyword searches law enforcement personnel initiated (or which a private citizen could search). As such, Westley had no objective expectation of privacy in those images, and law enforcement personnel were permitted to access these files. Norman, 448 F. App'x at 897 ("even if Norman held a subjectively reasonable expectation of privacy in the shared files on his computer, this expectation was not objectively reasonable. As the record shows, Norman's computer contained a peer-to-peer file-sharing program— which Norman himself used—that allowed other public users of such software to access the shared files on his computer."). Based on this information, law enforcement officials prepared an application for a search of the home and computer located at 607 Owens Street. The undersigned recognizes Westley's counsel's "big brother" arguments, but these arguments do not provide Westley with any relief. Even assuming Westley had a subjectively reasonable expectation of privacy, he did not have an objectively reasonable expectation, which the Norman case makes clear. Westley's Motion to Suppress Evidence, as supplemented, should be **DENIED**.

II.  **Suppress Statements**

Westley alleges that he reasonably believed he was not free to leave the kitchen in his mother's house. Westley asserts that he was handcuffed within seconds of officers entering his bedroom. Westley contends that he was not advised of his rights

6

AO 72A
(Rev. 8/82)

pursuant to Miranda. Westley seeks the suppression of all statements made pre- and post-arrest, as well as any evidence gathered as a result of those statements.

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[1] Miranda, 384 U.S. at 444 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The circumstances of each case dictate "whether there is a restraint on the suspect's freedom of movement 'of the degree associated with a formal arrest.'" United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984)). An objective, reasonable person test has been adopted "in cases involving custody issues." Id. at 1359. In applying this test, "the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood [the] situation." Id. at 1360. In other words, the inquiry is whether "a reasonable [person] in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave" the scene. Id. (quoting Murphy, 465 U.S. at 430).

---

[1] "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

Based on the evidence before the Court, a reasonable person in Westley's position would have felt that his freedom of movement was restrained such that he could be considered under formal arrest at the time Farmer and Haines asked him questions in the kitchen of his mother's house. Farmer freely admits that Westley was not given his <u>Miranda</u> rights. Even if the tone of the interview were conversational, as the evidence suggests, there is nothing before the Court indicating Westley was free to leave the officers' presence at any time. In fact, Westley's uncontroverted testimony reveals that: he was sleeping at the time officers entered his bedroom; officers woke him up; several officers had their guns drawn upon their approach of Westley; Westley was handcuffed for a brief period; Westley was moved by officers to the living room, then the dining room, and then the kitchen; and an officer (who did not testify before the undersigned) told Westley he was to sit down while pushing Westley to a chair. In addition, the evidence before the Court indicates that Westley was transported to the police station by an officer in a police transport van and was not advised of his <u>Miranda</u> rights prior to the questioning which occurred at the police station.[2] Westley's statements (including the written statement concerning the file names) made in response to law enforcement questioning after the execution of the search warrant should be suppressed. In contrast, Westley's statement to his mother that it was his fault police were at the house because of things on his computer should not be suppressed. This statement was not made in response to any law enforcement-initiated questioning and appears to have been made voluntarily.

---

[2] It is not relevant whether Westley was told he was going to the police station, as he testified, or if officers asked Westley if he would go to the police station, as the officers testified. What is relevant is what a reasonable person in Westley's position believed at the time.

8

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Westley's Motion to Suppress Evidence, as supplemented, be **DENIED**. (Doc. Nos. 19, 30). It is also my **RECOMMENDATION** that Westley's Motion to Suppress Statements, as supplemented, be **GRANTED** in part and **DENIED** in part. (Doc. Nos. 20, 31). The Government should be entitled to use Westley's statement made to his mother as evidence during the prosecution of this case; however, the Government should not be entitled to use any other statements Westley gave while in the kitchen in his mother's home or any statements Westley gave while at the Waycross Police Department on the date the search warrant was executed.

**SO REPORTED** and **RECOMMENDED**, this 30th day of April, 2014.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)